**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRICK CITY GRILL, INC. d/b/a/ ARENA BAR, 218 MULBERRY, LLC, TITAN MANAGEMENT GROUP, LLC, ANTONIO RODRIGUES, and JOHN BRITO, | No. 14-4491 (KSH) |
| *Plaintiffs,* | |
| v. | |
| CITY OF NEWARK, NEWARK DIVISION OF ALCOHOL CONTROL BOARD, N.J. DIVISION OF ALCOHOLIC BEVERAGE CONTROL, | **Opinion** |
| *Defendants.* | |

**Katharine S. Hayden, U.S.D.J.**

Before the Court are two motions to dismiss the complaint in this action that were filed by the City of Newark and the Newark Division of Alcohol Control Board (together, "Newark defendants") [D.E. 6] and the New Jersey Division of Alcoholic Beverage Control [D.E. 3]. For the reasons that follow, the motions are granted and the complaint is dismissed.

### I.   Background

This action arises out of the Newark defendants' alleged confiscation of Arena Bar's liquor license on May 15, 2012. Arena Bar operated as a restaurant and bar on Mulberry Street in Newark, New Jersey and, on May 14, 2012, a shooting occurred nearby. Though plaintiffs maintain that the shooting did not occur "in the bar or in any area directly outside the bar" (Compl. ¶ 10), the Newark defendants apparently confiscated Arena Bar's liquor license because of its proximity to the incident.

Plaintiffs now allege that this action was taken without cause, a suspicion purportedly confirmed by the Essex County Prosecutor's Office's subsequent inability to locate sufficient evidence that "the incident had any relationship whatsoever to Arena Bar."  (Compl. ¶ 11.) Although the liquor license was returned on June 26, 2012, plaintiffs allege that the confiscation had severe consequences for Arena Bar's business—the license was revoked during "the busiest season of the year at the [nearby] Prudential Center as they were hosting the Devil's Stanley Cup playoffs and finals, Portugal Day festival and multiple concerts." (Compl. ¶ 14.)  Plaintiffs claim they lost substantial revenue and Arena Bar's reputation was so damaged that it was unable to procure liquor liability insurance and assault and battery coverage.  They assert that the damage—both to its bottom line and public image—ultimately caused the restaurant to close its doors.

Nearly two years after the license was revoked, plaintiffs commenced this action against the City of Newark, the Newark Division of Alcohol Beverage Control Board and the New Jersey Division of Alcoholic Beverage Control ("NJ-ABC") in the Superior Court of New Jersey, Essex County.  On July 16, 2014, the action was removed to this Court pursuant to 28 U.S.C. § 1441(a).

## II.   __Standard__

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions, as well as facts that are not well-pleaded, are to be disregarded, and if what remains fails to "show" an entitlement to relief, even with all inferences being drawn in plaintiff's favor, the complaint will be dismissed.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Because a Rule 12(b)(6) motion is a test of the complaint itself, it is generally improper for a court to consider matters outside of the pleadings in ruling on the motion, although a court may

look to exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of the complaint. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

**III.** **Discussion**

The complaint now before the Court consists of four counts asserting the following causes of action against all defendants: (1) negligence; (2) tortious interference with prospective economic advantage; (3) violation of the plaintiffs' right to due process and equal protection under 42 U.S.C. § 1981; and (4) violation of plaintiffs' rights under 42 U.S.C. § 1983.

   *1. Negligence and Tortious Interference*

Plaintiffs allege negligence on the part of both Newark defendants and NJ-ABC, citing their failure to abide by the statutory, regulatory, and municipal code requirements for revocation of a liquor license. They argue that, as to Newark, the defendants failed to provide the requisite five-day notice before suspending or revoking Arena Bar's license; denied plaintiffs "a reasonable opportunity to be heard" with regard to the charges noticed; and improperly effectuated the confiscation by failing to provide "a notice in writing of … revocation, designating the effective date thereof." *See* Plaintiffs' Opp. at 14-15 (citing N.J.S.A 33:1-31.) As to the NJ-ABC, plaintiffs maintain that the Division of Alcoholic Beverage Control was obligated by statute to "supervise the … distribution and sale of alcoholic beverages," and, by allowing Newark to shirk its statutory obligations, the agency breached a duty owed to plaintiffs here. Plaintiffs also attempt to state a cause of action for tortious interference with prospective economic advantage on the basis of the same facts.

Defendants argue that these common law claims are barred by the New Jersey Tort Claims Act ("TCA"), which provides absolute immunity for public entities in the issuance, denial,

suspension or revocation of a permit or license.  *See* N.J.S.A. 59:2-5.  The TCA provides that, with regard to the defendants' conduct here, "[a] public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked."   In a comment to this rule, the Report of the Attorney General's Task Force on Sovereign Immunity added further that "[t]his immunity is necessitated by the almost unlimited exposure to which public entities would otherwise be subjected if they were liable for the numerous occasions on which they issue, deny, suspend or revoke permits and licenses."   Report of the Attorney General's Task Force on Sovereign Immunity (May 1972), Comment to N.J.S.A. 59:2-5.

Interpreting N.J.S.A. 59:2-5, the New Jersey Supreme Court in *Malloy v. State*, 76 N.J. 515, 521 (1978) found as follows:  "In this State there are literally millions of licenses, certificates, permits and the like applied for, issued, renewed or denied.  It is inevitable that with such a staggering volume of activity, mistakes, both judgmental and ministerial, will be made.  The purpose of the immunity is to protect the licensing function and permit it to operate free from possible harassment and the threat of tort liability."  The Court added further that "the immunity granted is pervasive and applies to all phases of the licensing function, whether the governmental acts be classified as discretionary or ministerial."  *Id.* at 520.

Given the broad scope of this immunity—applying to "all phases of the licensing function"—the Court finds that plaintiffs' claims here for negligence and tortious interference are barred by the Section 59:2-5 of the TCA.  Apart from unsupported pleas that the Court find such immunity inapplicable to the claims asserted, plaintiffs mainly argue that dismissal is premature

4

at this motion to dismiss stage.  They maintain that all cases cited by the defendants considered the TCA's application to a licensing issue with the benefit of at least some discovery, and that this Court should not deprive them of the opportunity to pursue the same here.  While plaintiffs' observation regarding the authority cited is correct, the argument was explicitly rejected in *Lemma v. Pennwood Racing,* 2011 WL 2349820 (App. Div. 2011), where the court found that "[a]n affirmative defense, such as immunity from liability under the [Tort Claims Act], may be raised in a motion to dismiss under Rule 4:6-2(e) based upon the allegations in the pleadings."  *Id.* at *3 ("Plaintiffs argue, however, that the trial court erred by granting the State's motion because these parties had not yet exchanged discovery.  Again, we disagree.").  Accordingly, that discovery has not yet been exchanged in this action is no bar to the Court's finding of immunity on motion to dismiss.  *See, e.g. Endl v. New Jersey,* 5 F. Supp. 3d 689, 700 (D.N.J. 2014) (finding that UMDNJ, a state entity, was immune from liability under the TCA and granting motion to dismiss on that basis); *Bellocchio v. N.J. Dep't of Envtl. Prot.,* 16 F. Supp. 3d 367, 380-381 (D.N.J. 2014) (granting motion to dismiss "any tort claims asserted by Plaintiffs against the [New Jersey Turnpike Authority] because the NJTA is immune from suit under the TCA.")  Ruling otherwise would undermine the basic concept of immunity.  Plaintiffs' claims against the City of Newark, Newark Division of Alcohol Beverage Control Board and NJ-ABC for negligence and tortious interference therefore are dismissed.

## 2.  *Violation of Plaintiffs' Rights Under 42 U.S.C. § 1981*

In count three of the complaint, plaintiffs allege—without any factual support—that defendants violated their rights under  42 U.S.C. § 1981, which provides that:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws

and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981.  (Compl. ¶ 26.)

This statute addresses racial discrimination only, and plaintiffs' failure to allege any facts sufficient to show intentional, racial discrimination—or discriminatory animus of any kind—compels dismissal here.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002) ("§ 1981 provide[s] a private cause of action for intentional discrimination only").  In apparent recognition of their error, plaintiffs submit to the Court that they "acknowledge that the Section 1981 claim is not viable and seek[] leave to amend to recharacterize this claim as an equal protection claim based upon a 'class of one' theory." (Plaintiffs' Op. at 2, n.1.)  As the Third Circuit has made clear, however, a "single sentence, lacking a statement for the grounds for amendment and dangling at the end of [the] memorandum, [does] not rise to the level of a motion for leave to amend."  *Ramsgate Court Townhome Ass'n. v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002).  Accordingly, the Court agrees with plaintiffs' concession that the cause of action asserted in count three is "not viable"—and dismisses the claim on that basis—but declines to consider their request to amend the same in the middle of motion practice.

### 3.  Violation of Plaintiffs' Rights Under 42 U.S.C. § 1983

Plaintiffs also allege a Section 1983 claim based on the defendants' alleged violation of their rights to procedural due process.[1]  They submit that "the particular circumstance and the

---

[1]    To the extent plaintiffs' claim under Section 1983 is asserted against defendant NJ-ABC, that claim is dismissed.  The N.J. Division of Alcoholic Beverage Control, a state entity, is not a "person" subject to suit under the statute.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69 (1989); *see also McNeil v. McDonough*, 515 F. Supp. 113, 122 (D.N.J. 1980 ("From the legislative history outlined above, there can be no doubt that insofar as the [Division of Alcoholic Beverage Control] is itself named as a defendant, the State of New Jersey is effectively named.)  While plaintiffs here "seek[] leave to amend to assert [this] claim directly

process [they] were due is clearly laid out by New Jersey law, namely, by statute and municipal code" and such laws required that "any suspension of [their] license had to be preceded by 5 days of notice and an opportunity for a hearing." (Plaintiffs' Op. at 20.)  To state such a claim, plaintiffs must allege that (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) the procedures available to them did not provide due process of law.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).

The Newark defendants mostly concede that the first element of this analysis is satisfied. (Newark Br. at 11 ("Although the City does not concede this point absolutely, the City will assume, for the purposes of this motion, that Plaintiffs could have a protected due process right relative to the alleged confiscation of their liquor license.").)  As the New Jersey Supreme Court has found, "[a] liquor license in New Jersey vests a personal right in the licensee to conduct a business otherwise illegal." *Boss Co. v. Bd. of Comm'rs of City of Atl. City.*, 40 N.J. 379, 384 (N.J. 1963). Once the license is granted, the Supreme Court found, "it is protected against arbitrary revocation, suspension or refusal to renew." *Id.* at 384.  Considering the *Boss* decision, among others, a decision in this district concluded in *Sea Girt Restaurant & Tavern Ownrs Assoc. v. Borough of Sea Girt*, 625 F. Supp. 1482 (D.N.J. 1986) that "a New Jersey liquor license is an interest in property for purposes of federal due process analysis." *Id.* at 1488; *see also H&R Grenville Fine Dining, Inc. v. Borough of Bay Head*, 2011 WL 6339815 (D.N.J. Dec. 19, 2011) (Wolfson, J.)

---

against the Director of the NJ-ABC," because, in their view, "this technical amendment eliminates [the] defense," (Plaintiffs' Op. at 17 n.2) the Court, again, declines to consider such a request as a formal amendment to the pleadings.  As against NJ-ABC, plaintiffs assert their § 1983 claim against an improper defendant and the cause of action is dismissed on that basis.

(finding a liquor license to be a property interest).  Accordingly, for the purposes of this motion, plaintiffs state a protectable interest in the Arena Bar's liquor license.

To survive motion to dismiss, however, plaintiffs must also show that the procedures available following the license revocation violated their rights to due process.  While procedural due process generally involves notice and the right to be heard prior to any significant deprivation, the rights guaranteed are necessarily dependent on the circumstances out of which the taking arose. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Where, as here, the § 1983 claim is raised against a municipality, plaintiffs must allege the existence of an unconstitutional policy or custom or an unconstitutional failure to train.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Customs are "'practices of state officials … so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480).  If the policy or custom does not facially violate federal law, plaintiff must show "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiffs argue that "custom … may also be established by evidence of knowledge and acquiescence," *Beck*, 89 F.3d at 971, and submit that the complaint here supports such a finding. They claim that the Newark policymaking officials who confiscated the Arena Bar's liquor license—from whom plaintiffs allegedly sought guidance during the period of suspension—were

"aware of the confiscation without due process of law and acquiesced in its continuation for over a month."  (Plaintiffs' Op. at 23.)  But this assertion appears nowhere in the complaint, and the Court may not consider it or accept it as true in ruling on the present motion.  *See Penn. ex. Rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) (finding it "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Mindlance, Inc. v. DeVinney*, 2014 WL 1577698, at *5 n.5 (D.N.J. Apr. 21, 2014) (Chesler, J.) ("These facts are not pleaded in the Complaint, and cannot be used to defeat a motion to dismiss."). Disregarding, as it must, these unsupported contentions, the Court finds that the complaint here does not allege with any degree of specificity that an unconstitutional custom, policy or practice implemented by the Newark defendants led to the alleged confiscation.    Plaintiffs fail to describe what policy or custom allegedly guided the confiscation, identify the officials who implemented it, or provide any factual allegations about specific actions taken by such officials—or those at their direction—sufficient to satisfy the high threshold required under *Monell.  See Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (finding civil rights complaint inadequate where it fails to state "the conduct, time, place and persons responsible"); *Cortlessa v. County of Chester,* 2005 WL 2789178, at *8 (E.D. Pa. Oct. 26, 2005) (dismissing complaint that "summarily asserts that [defendants] 'had knowledge' or exhibited 'deliberate indifference' without referencing any specific facts supporting the 'who,' 'what,' and 'how' of those allegations.")  Accordingly, plaintiffs' claim under 42 U.S.C. § 1983 is dismissed.

## IV.    <u>Conclusion</u>

For the reasons discussed above, the Court grants defendants' motions.  The complaint is dismissed and an appropriate order will be entered.

/s/ Katharine S. Hayden

Date: March 31, 2015                                  Katharine S. Hayden, U.S.D.J.