<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRICK CITY GRILL, INC. d/b/a ARENA BAR;
218 MULBERRY, LLC; TITAN
MANAGEMENT GROUP, LLC; ANTONIO
RODRIGUES and JOHN BRITO,

      *Plaintiffs*,

   v.

CITY OF NEWARK; NEWARK DIVISION OF
ALCOHOL BEVERAGE CONTROL BOARD;
MICAHEL I. HALFACRE, IN HIS CAPACITY
AS DIRECTOR, NEW JERSEY DIVISION OF
ALCOHOLIC BEVERAGE CONTROL,

      *Defendants*.

Civil No.: 14-4491 (KSH) (CLW)

<u>OPINION</u>

**Katharine S. Hayden, U.S.D.J.**

      Before the Court are two motions to dismiss the first amended complaint (D.E. 28 ("Am. Compl.")) filed on June 1, 2015, by plaintiffs Brick City Grill, Inc. d/b/a/ Arena Bar ("Arena Bar"), 218 Mulberry, LLC, Titan Management Group, LLC, Antonio Rodrigues, and John Brito. The movants are defendant Micahel Halfacre in his capacity as director of the New Jersey Division of Alcoholic Beverage Control (D.E. 29) and the City of Newark and the Newark Division of Alcohol Beverage Control Board (together, the "Newark Defendants") (D.E. 32).

**I.    Factual Background & Procedural History**

      This action arises out of the Newark Defendants' confiscation of Arena Bar's liquor license on May 15, 2012, following a nearby shooting on May 14, 2012. (Am. Compl. ¶¶ 1, 10, 12, 14.) Plaintiffs maintain that although the shooting did not occur "in the bar or in any area

1

directly outside the bar," the Newark Defendants nevertheless confiscated Arena Bar's liquor license and did so without cause. (Am. Compl. ¶¶ 12-13.) After numerous informal communications with the Newark Defendants, Arena Bar got back the liquor license on June 26, 2014. Plaintiffs allege that the confiscation had severe consequences for Arena Bar's business because the license was revoked during "the busiest season of the year at the [nearby] Prudential Center as they were hosting the Devil's Stanley Cup playoffs and finals, Portugal Day festival and multiple concerts." (Am. Compl. ¶ 20.) Plaintiffs claim that, as a result, they were unable to pay for liquor liability insurance and assault and battery coverage and ultimately were forced to close Arena Bar. (Am. Compl. ¶¶ 23-26.)

Nearly two years after the license was revoked, plaintiffs commenced this action in state court on April 29, 2014, which was removed to federal court on July 16, 2014. (D.E. 1.) Originally, plaintiffs sued the Newark Defendants and the New Jersey Division of Alcoholic Beverage Control, alleging negligence; tortious interference with prospective economic advantage; violation of plaintiffs' right to due process and equal protection under 42 U.S.C. § 1981; and violation of plaintiffs' rights under 42 U.S.C. § 1983. The original defendants filed motions to dismiss (D.E. 3, 6), which were granted. (D.E. 19-20, 27.) Relevant here, the Court dismissed plaintiffs' procedural due process claim without prejudice as to the Newark Defendants because the complaint did not allege with any degree of specificity that an unconstitutional custom, policy, or practice implemented by defendants led to the confiscation. The Court therefore held that plaintiffs failed to meet the high threshold required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (D.E. 19 ("Prior MTD Opinion") at 6-9.) The Court dismissed the due process claim against the New Jersey Division of Alcoholic

2

Beverage Control because it is a state entity and therefore not a "person" subject to suit under 42 U.S.C. § 1983.  (Prior MTD Opinion at 6 n.1.)

Plaintiffs filed a first amended complaint on June 1, 2015, replacing the New Jersey Division of Alcoholic Beverage Control with Halfacre in his capacity as director and asserting two alternative § 1983 claims.  The first alleges that the Newark Defendants violated plaintiffs' due process rights by confiscating their liquor license without prior notice and a hearing.  (Am. Compl. ¶¶ 29-30.)  In support of this, plaintiffs allege that city officials, such as Adolph Perez, were aware of the circumstances surrounding the confiscation; the fact that the Newark Defendants did not return the license immediately, purportedly indicates that Newark has failed to train its officials to comply with due process and that confiscation without due process constitutes the official policy or custom of Newark.  (Am. Compl. ¶¶ 31-33.)  With respect to Halfacre, plaintiffs allege that he "has failed to appropriately supervise Newark."  (Am. Compl. ¶ 35.)

The alternative § 1983 claim alleges a "class of one" equal protection violation.  Specifically, plaintiffs allege that by taking away their liquor license without the required five-day statutory notice and an opportunity for a hearing, Newark treated them differently from other similarly situated licensed facilities.  (Am. Compl. ¶¶ 39, 42-44.)  To evidence this, plaintiffs allege that there was a shooting at the Palladium Ballroom on May 12, 2012, and that facility remained open.  (Am. Compl. ¶ 40.)  Plaintiffs also generally allege that "many after-hours locations advertise and host events," which "are recorded and placed on the internet including brawls and fights among the patrons but the establishments are allowed to remain open and serve alcohol."  (Am. Compl. ¶ 41.)

3

To summarize, the additional factual allegations in the first amended complaint are that: (i) defendants confiscated Arena Bar's liquor license without notice or an opportunity for a hearing (Am. Compl. ¶ 19); (ii) during the period of confiscation, plaintiffs made approximately 20 inquiries to various individuals, including "the ABC and its Director, Ado[l]ph Perez, the Essex County Prosecutor's office, Newark Corporate Counsel, and others, including Mr. Adaniz, the attorney first representing the City of Newark, and Ms. Angela Foster, the Acting Chief Municipal Prosecutor for Newark" (Am. Compl. ¶ 21); and (iii) since all of these individuals with decision-making authority were aware that plaintiffs' liquor license was confiscated, they acquiesced in the continuing deprivation (Am. Compl. ¶ 22).

On February 29, 2016, the Court heard oral argument on both motions to dismiss the first amended complaint, and now writes for the parties.

## II. Legal Standard

*Federal Rule of Civil Procedure* 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must do more than allege the plaintiff's entitlement to relief; it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "detailed pleading is not generally required." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Instead, the familiar precept applies that the Court "'must accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff[s].'" *Ecotone Farm LLC v. Ward*, __ Fed. App'x __, 2016 WL 335837 (3d Cir. 2016) (quoting *New Jersey Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014)). But the Court need not "accept unsupported

4

conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 218-19 (3d Cir. 2015).

The statute plaintiffs rely on for both causes of action provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"  42 U.S.C. § 1983.

### III. Analysis
#### a. The Newark Defendants' Motion to Dismiss
##### i. Due Process Claim

"To state a claim for due process, plaintiffs must allege that (1) they were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) the procedures available to them did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  With respect to the second element, when the claim is brought against a local government body, plaintiffs must allege an unconstitutional policy, custom, or failure to train.  *Monell*, 436 U.S. at 690-95.

The Court presumes, and the Newark Defendants concede, that as a property interest, plaintiffs' liquor license satisfies the first element required to state a claim for a due process violation.  However, the first amended complaint falls short on the second element:  that the procedures available to plaintiffs did not provide due process of law.  *Hill*, 455 F.3d at 233-34.  The deficiencies are twofold.

First, plaintiffs still fail to correct the defect in the original complaint and adequately identify any unconstitutional custom, policy, or practice the defendants implemented that led to the confiscation, as required by *Monell*.  The new facts boil down to allegations that some city officials were aware that the license confiscation occurred without notice and a hearing, that they

took no action to return it, and that this evidences a failure to train staff.[1]  This is legally insufficient to allege a policy, which "is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Although "an official with policymaking authority can create official policy, even by rendering a single decision," plaintiffs have not alleged that there was any such proclamation or edict directing officials to confiscate licenses without notice and a hearing.  *Pomykacz v. Borough of W. Wildwood*, 438 F. Supp.2d 504, 517 (D.N.J. 2006) (discussing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

The pleaded facts are also insufficient to allege a custom, which is a "'practice[] of state officials . . . so permanent and well settled' as to virtually constitute law."  *Beck*, 89 F.3d at 971 (quoting *Andrews*, 895 F.2d at 1480).  Although custom "may also be established by evidence of knowledge and acquiescence," plaintiffs have not asserted facts demonstrating that the officials' inaction after knowledge of an alleged constitutional deprivation amounts to a permanent and well-settled occurrence.  *Id.*  Overall, the first amended complaint states merely that an improper confiscation occurred one time.

Absent a facial violation of federal law, plaintiffs must show "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  Plaintiffs do not allege any intent; rather, they allege knowledge and inaction, which is more akin to "simple or even heightened

---

[1] Specifically, plaintiffs allege that "[c]ity officials, such as Adolph Perez who confiscated or directed the confiscation of the Arena's liquor license are charged with decision-making authority and control over liquor licenses.  These officials, as well as the numerous City and County officials that Plaintiffs sought help from [while the license was confiscated] were aware of the confiscation without due process of law and acquiesced in its continuation for over a month during the busiest time of the year." (Am. Compl. ¶ 31.)

6

negligence." *Id.*  Plaintiffs' contention that they cannot determine how often the purported unlawful confiscation process is employed until the parties engage in discovery is akin to a fishing expedition and does not overcome the failure plausibly to allege that unlawful confiscations in addition to theirs have occurred.

The second deficiency is that plaintiffs again fail to allege that the available procedures were insufficient to provide due process of law.  *See Hill*, 455 F.3d at 233-34.  Under special circumstances, such as when there is the need for quick action or where providing pre-deprivation process would be impractical, a government entity "may satisfy the requirements of procedural due process merely by making available some meaningful means by which to assess the propriety of the State's action at some time after the initial taking." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 414 (3d Cir. 2008) (internal quotation marks omitted). "[W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . , the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* at 418.  Here, there is sufficient competent evidence—namely the shooting near Arena Bar—to warrant emergency action and relief from the Newark Defendants' obligation to hold a pre-deprivation hearing.  (Am. Compl. ¶ 12.)  The fact that the Essex County Prosecutor's Office allegedly found no evidence of a relationship between the shooting and Arena Bar several days later (Am. Compl. ¶ 13), does not negate the nature of the emergency circumstances on the night of the shooting and shortly thereafter when plaintiffs' license was confiscated.[2]

Thus, the Court must determine whether there was some meaningful way to review the initial taking that complies with due process.  *Elsmere Park Club, L.P.*, 542 F.3d at 414.  Upon

---

[2] Although not part of the pleadings and not necessary for the Court's conclusions, plaintiffs' counsel acknowledged at oral argument that there was an ongoing investigation for several days following the shooting.

the suspension or revocation of any license by a municipal or city alcohol beverage control board, New Jersey statutory law grants the licensee a right of appeal to the director of the New Jersey Division of Alcoholic Beverage Control after paying a $100 filing fee, "which appeal shall act as a stay of such suspension or revocation pending the determination thereof unless the director shall otherwise order." N.J.S.A. 33:1-31. The director then fixes a time for the hearing of the appeal and provides at least five days' notice to the licensee and the issuing authority that suspended the license. *Id.* Plaintiffs allege that they called various city representatives at least 20 times, but do not plead that they requested a post-deprivation hearing from the city or appealed the confiscation to the State. (Am. Compl. ¶ 21.) There is nothing to suggest that the license confiscation is distinguishable from a "suspension" as the term is used in the statute, or that the municipal action would not be subject to review. Accordingly, meaningful process was available. As plaintiffs' counsel stated at oral argument, plaintiffs took the route of informal communications with local officials in an attempt to get the liquor license back as quickly as possible. This is a choice plaintiffs made. Having sought the benefit of quick, informal relief, plaintiffs cannot now seek redress where they eschewed the available remedy of administrative appeal. Given the immediate and ongoing shooting investigation, it cannot be said that the Newark Defendants acted arbitrarily or abused their discretion.

Thus, the Court finds that plaintiffs have not sufficiently pled a due process violation. Because plaintiffs have already had an opportunity to amend their pleadings on this claim and have not asserted the need to add new facts in either their briefings or during oral argument, the Newark Defendants' motion to dismiss as to the due process claim is granted with prejudice.

### ii. Equal Protection Claim

Plaintiffs' alternative equal protection argument is framed under the "class of one" theory. "In order to state a claim for [a] 'class of one' [denial of] equal protection, a plaintiff

must at a minimum allege that [it] was" (1) "treated differently from others similarly situated by the defendant" (2) intentionally, and (3) "that there was no rational basis for such treatment.'" *Chavarriaga*, 806 F.3d at 233 (quoting *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)); *see also Hill*, 455 F.3d at 239.  The Supreme Court first articulated the theory by name in *Village of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000), in which Willowbrook conditioned water service on a homeowner's granting a 33-foot easement, even though other property owners were required to grant only a 15-foot easement.  Below, the plaintiff had alleged that the 33-foot easement demand was "irrational and wholly arbitrary" and "actually motivated by ill will resulting from the Olechs' previous filing of an unrelated, successful lawsuit against the village." *Id.*  The Supreme Court permitted the complaint to proceed under a class of one theory, stating that "allegations of irrational and wholly arbitrary treatment, even without allegations of improper subjective motive, were sufficient to state a claim for relief under equal protection analysis."  *Phillips*, 515 F.3d at 243 (citing *Olech*, 528 U.S. at 564-65).

In *Phillips*, the Third Circuit looked approvingly on Second Circuit case law that held a plaintiff need not identify specific instances of different treatment; however the complaint must allege different treatment than similarly situated individuals received.  *Id.* at 243, 245-46 (discussing *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) and affirming complaint was inadequately pled where it alleged plaintiff received poor, but not *different*, treatment from similarly situated individuals); *see also Hill*, 455 F.3d at 239 (affirming dismissal where plaintiff did not allege similarly situated individuals who were treated differently).  Although the Third Circuit adopted this somewhat relaxed pleading standard, it is noteworthy that *Phillips* was decided more than a year before *Iqbal*, 556 U.S. at 669, wherein the Supreme Court emphasized that, to survive a motion to dismiss, plaintiffs must plead factual content that "states a plausible

claim for relief." Where the facts permit a court to infer only a "mere possibility of misconduct," the complaint has not shown the pleader is entitled to relief pursuant to *Rule* 8(a)(2). *Id.*

The first amended complaint alleges that "Newark treated plaintiffs differently than other similarly situated licensed facilities" by confiscating its liquor license without the five day statutory notice and an opportunity for a hearing. (Am. Compl. ¶ 39.) Although not required to "name names," plaintiffs note that the Palladium Ballroom had a shooting at the facility in 2012 and remained open. (Am. Compl. ¶ 40.) They also allege that "many after-hours locations . . . host events" which are "recorded and placed on the internet including brawls and fights among the patrons but the establishments are allowed to remain open and serve alcohol." (Am. Compl. ¶ 41.) While this is sufficient to allege unequal treatment, it is not sufficient to allege that the similarly situated component of an equal protection claim. "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992)). Plaintiffs have merely stated the legal conclusion that the Palladium Ballroom and other "after-hours locations" are similarly situated, but they have not alleged facts to support the inference that these locations are alike "in all relevant aspects"—namely that these other facilities were licensed by the Newark Division of Alcohol Beverage Control Board, were subject to an investigation following a violent altercation nearby, and did not make use of the formal due process available via N.J.S.A. 33:1-31. *See id.*

The Court also finds that plaintiffs have failed to sufficiently allege there was no rational basis for their treatment. The first amended complaint simply states that "[t]he City of Newark intentionally singled out Arena Bar for disparate treatment," and that "[t]here was no rational basis for the difference in treatment between Arena Bar and other licensed establishments in the

10

City of Newark." (Am. Compl. ¶¶ 42, 43.) These are conclusory statements that simply mirror the elements required to plead a cognizable class of one claim. They are not facts that plausibly support an inference that the Newark Defendants acted arbitrarily. Further, the remaining allegations in the complaint suggest a wholly rational basis for plaintiffs' treatment: the need to undertake an investigation of the shooting near Arena Bar.

Although the first amended complaint is the first time plaintiffs set forth their "class of one" equal protection theory, its filing followed this Court's dismissal of the initial complaint and plaintiffs' explicit request to amend. Because plaintiffs were aware that they needed to revise their pleadings and because they have not asserted that there are additional facts that would satisfy the pleading burden with respect to this claim in either their opposition papers or at oral argument, the Court grants the Newark Defendants' motion to dismiss the equal protection claim with prejudice.

### b. Halfacre's Motion to Dismiss

The newly-added defendant Halfacre (director of the New Jersey Division of Alcohol Beverage Control) argues that he is entitled to immunity for the federal causes of action against him in his official capacity because the Eleventh Amendment prohibition of lawsuits against the state also applies when a state official is sued for damages in his or her official capacity. Building upon this, he argues that he is not a "person" subject to suit under 42 U.S.C. § 1983. Plaintiffs respond that Halfacre should not be dismissed from this suit because he can be sued in his individual capacity without plaintiffs having explicitly stated as much in the first amended complaint. Plaintiffs also assert that the case upon which Halfacre relies for his position that he is not a "person," *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), was later clarified and does not support dismissal.

11

In the context of Eleventh Amendment immunity, the Supreme Court distinguished official-capacity suits from personal- or individual-capacity suits:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g.*, *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. NewYork City Dept. of Social Srvs.*, 436 U.S. 658, 690, n.55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Court explained the substantive distinction that, in a § 1983 action, personal liability may be established by a showing that the official caused the deprivation of a federal right while acting under color of state law. *Id.* at 166. However, in an official-capacity § 1983 action, the governmental entity is only liable when it is a "moving force" behind the deprivation and its "policy or custom" played a role. *Id.* But procedurally, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly . . . . Unless a State has waived its Eleventh Amendment immunity . . ., a State cannot be sued directly in its own name regardless of the relief sought." *Id.* at 167 n.14 (internal citations omitted); *see also Crump v. Passaic Cnty*, __ F. Supp.3d __, 2015 WL 7761064 at *7 (Dec. 2, 2015) (noting that some courts have dismissed official-capacity defendants to avoid redundancy and inefficiency and the Third Circuit has affirmed, but other courts retain the official-capacity defendants where they must answer to other charges in the same action).

With respect to whether Halfacre is a "person" under 42 U.S.C. § 1983, *Will* reiterates that the Eleventh Amendment bars federal civil rights suits against a state unless the state has waived immunity or Congress has overridden it. 491 U.S. at 66-67. The Supreme Court also

restates in *Will* that a suit against a state official in his or her official capacity is essentially a suit against the official's office and therefore indistinguishable from a suit against the state itself. *Id.* at 71. Thus, although state officials are literally persons, when they are acting in their official capacities they are not "persons" under § 1983. *Id.*

This Court previously dismissed plaintiffs' § 1983 claims against the New Jersey Division of Alcoholic Beverage Control because it is a state entity and therefore not a "person" subject to suit under the statute. (Prior MTD Opinion at 6-7 n.1.) Because a § 1983 suit against the head of a government agency in his official capacity is equivalent to a suit against that local government unit, *Kentucky*, 473 U.S. at 167 n.14, it is appropriate to dismiss the claims in the first amended complaint against Halfacre in his official capacity insofar as he is sued as the head of the New Jersey Division of Alcohol Beverage Control, a state entity.[3]

Plaintiffs' opposition indirectly seeks to preserve their claims by converting the suit to a personal-capacity action, citing a Third Circuit case that directed a district court to construe a complaint as suing an official in his personal capacity. *Hafer v. Melo*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd Hafer*, 502 U.S. at 31. There, the complaint explicitly asserted claims against the defendant in her official capacity, but stated that monetary claims were "asserted against the defendant in her personal capacity." *Id.* at 635. The Third Circuit noted that, although not explicit, it was clear that the suit was intended as a personal-capacity action because the captions in the complaints referred to the official by name only and did not refer to her employer. *Id.* Finally, the defendant understood that she was being sued personally because she raised the defense of qualified immunity, which is only available to those sued individually. *Id.; see also*

---

[3] The case plaintiffs cite that allegedly distinguishes *Will* does no such thing. In *Hafer v. Melo*, 502 U.S. 21, 26-27 (1991), the Supreme Court reiterated the holding of *Will*, but noted that it did not apply to one sued in his or her personal capacity. *Id.* Because Halfacre is clearly sued in his official capacity here, his motion to dismiss must be granted.

13

*Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988) (instructing district court to interpret pleadings to ascertain plaintiff's intent where the complaint is deficient for failing to state whether the defendant is sued personally or in his or her official capacity). This is all distinguishable from the case at bar where the first amended complaint explicitly references Halfacre in his official capacity, in both the caption and operative paragraphs, and makes no reference to his personal capacity. (Am. Compl. at 1, 2, ¶ 35.) Also, given the case history, Halfacre is essentially a stand-in for an entity which is not a viable defendant. Accordingly, the Court will dismiss the claims against Halfacre with prejudice.[4]

Given the Eleventh Amendment immunity, the Court need not reach Halfacre's substantive argument that the claims must be dismissed because they are based on respondeat superior liability as opposed to supervisory liability, which is insufficient in a § 1983 case. *See Jimenez v. New Jersey*, 245 F. Supp.2d 584, 586 n.3 (D.N.J. 2003) (citing *Polk Cnty v. Dodson*, 454 U.S. 312, 325 (1982)) (no respondeat superior liability in a § 1983 action); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (for a supervisor to be liable under § 1983, he or she "must have personal involvement in the alleged wrongs"). However for completeness, the Court finds that the argument offers an appropriate basis to dismiss the claims against Halfacre. The first amended complaint alleges only that Halfacre "failed to appropriately supervise Newark's carrying out of the statutory mandate set forth in N.J.S.A. 33:1-31." (Am. Compl. ¶ 35.) To the extent this alleges liability under a respondeat superior theory, it is insufficient. *See*

---

[4] "The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court." *Coventry v. U.S. Stell Corp.*, 856 F.2d 514, 518 (3d Cir. 1988). The Court dismisses with prejudice because any amendment suing Halfacre in his personal capacity would be futile. With the benefit of a prior opportunity to amend their complaint, plaintiffs have asserted merely that Halfacre "failed to appropriately supervise Newark's carrying out of the statutory mandate set forth in N.J.S.A. 33:1-31." (Am. Compl. ¶ 35.) They do not allege that he had any personal involvement with their case or directed a subordinate to act in any improper way with respect to the license confiscation. Given the background of the case and the admitted absence of any appeal to the state ABC board, the Court finds that any further amendment with respect to Halfacre in his personal capacity would be futile.

*Jimenez*, 245 F. Supp.2d at 586 n.3. To the extent it alleges a type of supervisory liability, the first amended complaint fails to state a claim upon which relief can be granted because it does not allege that Halfacre had any personal involvement with plaintiffs' case or directed a subordinate to act in any improper way with respect to the license confiscation. Indeed, plaintiffs do not even allege that they contacted anyone at the New Jersey Division of Alcoholic Beverage Control or that they had any contact with Halfacre. (Am. Compl. ¶ 21.) Plaintiffs also do not allege that Halfacre maintained a policy, practice or custom that was deliberately indifferent and caused their constitutional harm. *See A.M. ex rel. J.M.K.*, 372 F.3d 572, 586 (3d Cir. 2004) (policymaker may be liable under § 1983 if he or she, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused[the] constitutional harm."). Even affording favorable inferences to the plaintiffs, the statement that Halfacre "failed to appropriately supervise" is insufficient to allege supervisory liability.

## IV.  Conclusion

For the reasons discussed above, the Court finds that after making amendments to their complaint, plaintiffs have failed to state a claim against the Newark Defendants with respect to both their due process and equal protection claims. Further, the Court finds that Halfacre is immune from suit under the Eleventh Amendment and that any amendment against him in his personal capacity would be futile. An appropriate order will be entered.

s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.
